**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

KIMBERLY DICKS,

      Plaintiff,

v.                                           Case No. 3:18-cv-1397-J-JRK

ANDREW M. SAUL,[1]
Commissioner of Social Security,

      Defendant.

_____

## **OPINION AND ORDER**[2]

### **I. Status**

Kimberly Dicks ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claims for disability income benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of "constant pain," "bone growing away from toe in both feet," arthritis in both feet and in her left knee, and migraines. Transcript of Administrative Proceedings (Doc. No. 16; "Tr." or "administrative transcript"), filed February 14, 2019, at 67, 75, 85, 94, 310 (capitalization and emphasis omitted). Plaintiff filed applications for DIB and SSI on September 22, 2014, alleging an onset disability date of November 1, 2013. Tr. at 241-42

---

[1]     Andrew M. Saul became the Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Nancy A. Berryhill as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 15), filed February 14, 2019; Reference Order (Doc. No. 17), entered February 15, 2019.

(DIB); Tr. at 249 (SSI).³ The applications were denied initially, Tr. at 75-82, 83, 107, 116-18 (DIB); Tr. at 67-74, 84, 108, 113-15 (SSI), and upon reconsideration, Tr. at 85-93, 103, 106, 121-25 (DIB); Tr. at 94-102, 104, 105, 126-30 (SSI).

On July 25, 2017, an Administrative Law Judge ("ALJ") held a hearing via video teleconference, see Tr. at 42, during which she heard testimony from Plaintiff, who represented herself,⁴ and a vocational expert ("VE"). See Tr. at 40-63. At the time of the hearing, Plaintiff was forty-seven years old. See Tr. at 47 (testifying as to date of birth). The ALJ issued a Decision on September 29, 2017, finding Plaintiff not disabled through the date of the Decision. Tr. at 26-34.

Thereafter, Plaintiff requested review of the Decision by the Appeals Council. Tr. at 219-20. Plaintiff was then appointed an attorney to represent her with respect to the appeal of the ALJ's Decision. See Tr. at 18. On September 12, 2018, the Appeals Council denied Plaintiff's request for review, Tr. at 5-7, thereby making the ALJ's Decision the final decision of the Commissioner. On November 26, 2018, Plaintiff commenced this action through counsel under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1) seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff makes the following argument: The ALJ's "failure to fully develop the effects of pain in this case is reversible error." Memorandum in Support of Complaint (Doc. No. 22; "Pl.'s Mem."), filed April 25, 2019, at 7; see Pl.'s Mem. at 4-7. In

---

³ Although actually completed on September 22, 2014, see Tr. at 241-42 (DIB); Tr. at 249 (SSI), the protective filing date of the applications is listed elsewhere in the administrative transcript as August 25, 2014, see, e.g., Tr. at 75 (DIB); Tr. at 67 (SSI).

⁴ Plaintiff was represented by an attorney, see Tr. at 110, 112, but he withdrew prior to the hearing, see Tr. at 216 (letter from attorney dated June 6, 2017). At the hearing, the ALJ noted that Plaintiff's former attorney did not have "accredited documentation in order to represent [Plaintiff]." Tr. at 43.

- 2 -

making this argument, Plaintiff also asserts that the ALJ "never discussed the records from Advanced Pain [Medical Center[5]] or the weight that was to be assigned to these records." Id. at 7. On June 14, 2019, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 23; "Def.'s Mem.") addressing Plaintiff's argument. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be affirmed.

## **II. The ALJ's Decision**

When determining whether an individual is disabled,[6] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

---

[5] Plaintiff has received pain management treatment at Advanced Pain Medical Center from July 2015 to at least June 2017. See Tr. at 573-647.

[6] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 29-34. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since November 1, 2013, the alleged onset date." Tr. at 29 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: hallux valgus, acute gouty arthropathy, and osteoarthritis of the left knee." Tr. at 29 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meet or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 29 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform sedentary work as defined in 20 [C.F.R. §§] 404.1567(a) and 416.967(a) except [Plaintiff] can occasionally climb ramps, stairs, ladders, ropes, or scaffolds. [Plaintiff] can occasionally balance, stoop, kneel, crouch, and crawl. [Plaintiff] can occasionally push, pull, and operate foot controls with the bilateral lower extremities.

Tr. at 30 (emphasis omitted).

At step four, the ALJ relied on the testimony of the VE and found that Plaintiff is "unable to perform any past relevant work." Tr. at 32 (emphasis and citation omitted). At step five, after considering Plaintiff's age ("43 years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ again relied on the testimony of the VE and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," such as "document scanner," "food checker," and "addressing clerk." Tr. at 32-33 (emphasis and citation omitted). The ALJ concluded that Plaintiff "has not been under a disability . . . from

November 1, 2013, through the date of th[e D]ecision." Tr. at 34 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### IV. Discussion

As noted, Plaintiff argues the ALJ did not "fully develop the effects of pain." Pl.'s Mem. at 7. In making this argument, Plaintiff also takes issue with the ALJ's assessment of the treatment notes from Advanced Pain Medical Center. Initially, the parties' arguments

and the applicable law is set out. Then, Plaintiff's contentions are addressed. Specifically, the undersigned addresses first whether the ALJ's assessment of Plaintiff's subjective complaints (including the ALJ's evaluation of the Advanced Pain Medical Center records) is supported by substantial evidence and second, whether the ALJ abrogated her duty to develop a full and fair record of Plaintiff's pain complaints.

**A. Parties' Arguments**

In challenging the ALJ's finding regarding Plaintiff's subjective complaints of pain, Plaintiff mainly argues the ALJ failed to ask Plaintiff at the hearing about "pain issues" and about her activities of daily living. Id. at 5-6. Plaintiff contends that "she did testify that she had pain but the ALJ never discussed those issues in depth with . . . [P]laintiff and how those pain complaints may interfere with her ability to perform other work." Id. at 5. According to Plaintiff, the ALJ's failure to ask Plaintiff about her daily activities "makes it difficult to assess the effects of any impairments and the effects of pain." Id. at 6. As noted, Plaintiff also asserts the ALJ "never discussed the records from Advanced Pain [Medical Center] or the weight that was to be assigned to these records." Id. at 7.

Responding, Defendant argues that "[t]he medical records and other evidence, as discussed by the ALJ, support the ALJ's evaluation of Plaintiff's subjective statements and h[er] assessment of Plaintiff's RFC." Def.'s Mem. at 6 (citation omitted). As to Plaintiff's activities of daily living, Defendant contends the ALJ noted that Plaintiff was "independent in her personal care and grooming, could drive a car, can do household chores and cooking, could shop for groceries at least twice a month, and could manage money without difficulty." Id. at 8 (citation omitted). Lastly, Defendant asserts that "[w]hile Plaintiff contends the ALJ 'never discussed the records from Advanced Pain [Medical Center],' the

ALJ fully considered these records as [Exhibit] 6F of the [administrative] transcript in the [D]ecision." Id. at 10 (citations omitted).

**B. Applicable Law**[7]

### 1. Subjective Symptoms

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.3d at 1223.

"When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)). To reject a claimant's assertions of subjective symptoms, "explicit and adequate reasons" must be articulated by

---

[7] On January 18, 2017, the SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (January 18, 2017). Because Plaintiff filed her claims before that date, the undersigned cites the rules and Regulations that were in effect on the date the claim was filed, unless otherwise noted.

the ALJ. Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).

In 2017, the SSA issued new guidance to ALJs about how to evaluate subjective complaints of pain and other symptoms. The SSA has "eliminat[ed] the use of the term 'credibility' from [its] sub-regulatory policy, as [the R]egulations do not use this term." Social Security Ruling ("SSR") 16-3P, 2017 WL 5180304, at *2 (Oct. 25, 2017).[8] "In doing so, [the SSA has] clarif[ied] that subjective symptom evaluation is not an examination of an individual's character." Id. Accordingly, ALJs are "instruct[ed] . . . to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." Id. "The change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." Cole v. Colvin, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

---

[8] There was a prior version of SSR 16-3P in place at the time of the ALJ's Decision. See SSR 16-3P, 2016 WL 1119029 (Mar. 16, 2016). The same relevant language quoted in this Opinion and Order appears in this prior version. See id. at *1.

**2. Treating Physician Opinions**

The Regulations establish a "hierarchy" among medical opinions[9] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5) (2006)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5); see also 20 C.F.R. §§ 404.1527(f), 416.927(f).

With regard to a treating physician,[10] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c)(2). Because treating physicians "are likely to be the medical professionals most able to provide a detailed,

---

[9] "Medical opinions are statements from physicians or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources"); 20 C.F.R. § 404.1513(a).

[10] A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Schink v. Comm'r of Soc. Sec., 935 F.3d 1245 (11th Cir. 2019); Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1305 (11th Cir. 2018) (citation omitted); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. Schink, 935 F.3d at 1259; Hargress, 883 F.3d at 1305 (citation omitted); Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(c), 416.927(c) (stating that "[r]egardless of its source, we will evaluate every

medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981) (citation omitted); see also 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987)); Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

### 3. Duty to Fully and Fairly Develop the Record

"It is well-established that the ALJ has a basic duty to develop a full and fair record." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(d)). "Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." Id. (citing 20 C.F.R. § 416.912(a), (c)). To remand a case for the ALJ's failure to fully develop the record, there must be a showing that the claimant's right to due process has been violated because of such failure. Brown v. Shalala, 44 F.3d 931, 934-35 (11th Cir. 1995) (citing Kelley v. Heckler, 761 F.2d 1538, 1540 (11th Cir. 1985)). "If there has been a waiver of right to counsel, [a] claimant must show 'clear prejudice or unfairness' caused by lack of counsel in order to prove that he was denied a full and fair hearing and is entitled to a remand to

the [Commissioner]." Kelley, 761 F.2d at 1540 n.2 (11th Cir. 1985) (citations omitted).[11] Prejudice exists if the record contains evidentiary gaps which may cause the ALJ to reach an unfair determination due to the lack of evidence, Brown, 44 F.3d at 935, or if "the ALJ did not consider all of the evidence in the record in reaching his decision," Kelley, 761 F.2d at 1540.

**C. Analysis**

The ALJ followed SSR 16-3P and found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e D]ecision." Tr. at 30. As explained below, the undersigned finds that the ALJ's discussion of the evidence reflects adequate consideration of the relevant factors, and that the ALJ's assessment of Plaintiff's subjective complaints is supported by substantial evidence.

The ALJ initially recognized that the administrative transcript shows Plaintiff "has had chronic pain in her feet bilaterally since at least February 2013." Tr. at 31 (citation omitted). As the ALJ observed, however, Plaintiff "was noted to have an antalgic gait but

---

[11] Conversely, if a claimant does not validly waive the right to counsel, "the ALJ is under a 'special duty' to develop a full and fair hearing by conscientiously probing into all relevant facts." Kelley, 761 F.2d at 1540 n.2 (citations omitted). The United States Court of Appeals for the Eleventh Circuit has stated the following regarding the two standards and their application: "These two standards appear to differ only in degree. Both require that the ALJ fully develop the record. Both require a showing of prejudice to necessitate a remand to the [Commissioner] for reconsideration." Id. The difference is the specificity of prejudice that must be shown. Id.

Here, Plaintiff does not challenge whether she validly waived her right to counsel. See generally Pl.'s Mem. Indeed, Plaintiff did validly waive that right after being advised at the hearing of the right to be represented and being given an opportunity to reschedule the hearing if she needed more time to obtain representation. Tr. at 43-45.

with normal muscle strength on examination." Tr. at 31 (citation omitted); see Tr. at 386. The ALJ correctly stated that Plaintiff "underwent surgery but continued to complain of pain, which was felt to be out of proportion to the objective findings." Tr. at 31 (citation omitted); see Tr. at 410-11 (June 2013 operative report); Tr. at 443 (treatment note listing "left foot surgery" in past surgical history); Tr. at 403 (June 2013 post-operative treatment note indicating Plaintiff's "pain is out of proportion for the deformity"); Tr. at 407 (July 2013 treatment note indicating that Plaintiff's symptoms "are just out of proportion for the problem at hand"); see also Tr. at 393 (May 2013 treatment note indicating Plaintiff "does have chronic generalized pain of both of the feet and all of her symptoms appear to be out of proportion"). The ALJ also noted that Plaintiff began pain management in May 2014 and was prescribed narcotic pain medication. Tr. at 31 (citation omitted); see Tr. at 461-63.

In July 2015, Plaintiff began treatment at Advanced Pain Medical Center. See Tr. at 643 (July 15, 2015 treatment note indicating Plaintiff is a new patient). Contrary to Plaintiff's assertion that the ALJ did not discuss the medical records from Advanced Pain Medical Center, the ALJ specifically cited these records[12] in finding that Plaintiff "has not reported any side effects to her pain management physician" and in making the following findings:

> Recent records show that [Plaintiff] has continued complaints of pain in her feet and her left knee. [Plaintiff] goes to pain management approximately every forty-five days for medication management. No physician has recommended surgery, and [Plaintiff] reports good pain control with her medication regimen.

---

[12] The ALJ did not specifically refer to Advanced Pain Medical Center by name, but she cited Exhibit 6F, which consists solely of treatment notes from Advanced Pain Medical Center. See Tr. at 573-647.

Tr. at 31 (citations omitted). These findings are supported by the record. See Tr. at 573-647 (Advanced Pain Medical Center records); Tr. at 578 (March 2017 treatment note indicating that Plaintiff's "medications are providing 'some' relief without side effects" and that Plaintiff's pain level is a 4);[13] Tr. at 598 (November 2016 treatment note indicating that Plaintiff "denies side effects" and that Plaintiff's pain level is a 4); Tr. at 593 (September 2016 treatment note indicating Plaintiff "note[d] that her pain medications are working well without side effects" and that Plaintiff's pain level is a 4); Tr. at 603, 608 (July 2016 and June 2016 treatment notes indicating Plaintiff's pain level is a 5); Tr. at 613 (April 2016 treatment note indicating Plaintiff's "medications are working 'fine,'" that Plaintiff "reports no side effects," and that Plaintiff's pain level is a 2); Tr. at 618 (February 2016 treatment note indicating Plaintiff's pain level is a 3).

The ALJ did not assign a specific weight to the opinions expressed in the records from Advanced Pain Medical Center, but it is clear from the Decision that the ALJ accepted the impressions and diagnoses in the Advanced Pain Medical Center treatment notes. See Tr. at 31. These treatment notes are consistent with the ALJ's analysis and do not contradict the assessed RFC. See supra pp. 13-14 (discussing Advanced Pain Medical Center treatment notes). Accordingly, any error in the ALJ's failure to specifically assign weight to the opinions expressed in the treatment notes is harmless. See, e.g., Wright v. Barnhart, 153 F. App'x. 678, 684 (11th Cir. 2005) (finding that "[a]lthough the ALJ did not

---

[13] Plaintiff's pain level was evidently rated on a scale of 1 to 10 (as opposed to 1 to 5), as other earlier treatment notes indicate Plaintiff's pain level was higher than a 5. See Tr. at 623 (December 2015 treatment note indicating Plaintiff's pain level was a 7); Tr. at 628 (October 2015 treatment note indicating Plaintiff's pain level was a 7); Tr. at 633 (September 2015 treatment note indicating Plaintiff's pain level was a 7); Tr. at 638 (August 2015 treatment note indicating Plaintiff's pain level was a 6); Tr. at 643 (July 2015 treatment note indicating Plaintiff's pain level was a 7).

explicitly state what weight he afforded the opinions of [four physicians], none of their opinions directly contradicted the ALJ's findings, and, therefore, any error regarding their opinions is harmless").

In assessing Plaintiff's subjective complaints, the ALJ also adequately considered Plaintiff's activities of daily living. Citing Plaintiff's testimony and a function report completed by Plaintiff, the ALJ expressly noted that Plaintiff "is independent in her personal care and grooming, can drive a car, can do household chores and cooking, can shop for groceries at least twice a month, and can manage money without difficulty." Tr. at 32 (citation omitted). The ALJ found that these activities "are not as limited as one would expect given the complaints of totally disabling symptoms and limitations." Tr. at 32. The ALJ's findings as to Plaintiff's activities of daily living are supported by substantial evidence. See Tr. at 48 (Plaintiff testifying she is able to drive); Tr. at 50 (Plaintiff's testimony indicating she does household chores); Tr. at 328 (function report completed by Plaintiff indicating that her impairments have no effect on her ability to dress, bathe, "care for hair," shave, eat, or "use the toilet"; that her impairments affect "just" her ability to "put[ ] on shoes"; and that her "doctor only wants [her] to wear hiking boots or boots"); Tr. at 329 (function report completed by Plaintiff indicating Plaintiff prepares her own meals every day, specifically "regular meals with meat and veggies"); Tr. at 330 (function report completed by Plaintiff indicating she goes grocery shopping twice a month for "maybe 2 hours total," but that she tries "to get in and get out and get back home to take of[f] shoes," and indicating that she is able to pay bills, count change, handle a savings account, and use a checkbook/money orders).

The undersigned finds that the ALJ did not abrogate her duty to fully and fairly develop the record, and in any event, Plaintiff has not shown prejudice such that a remand is required for further proceedings. Although the ALJ did not ask Plaintiff questions about certain specific aspects of her pain, such as the level of pain or the side effects of her medication, as noted above, the administrative transcript contained sufficient evidence as to these issues. As to Plaintiff's daily activities, the ALJ asked Plaintiff to describe what she does in a typical day, whether she does any household chores, whether she goes "anywhere on a regular basis," and whether she is "able to get [her]self something to eat." Tr. at 50-51. As Plaintiff acknowledges, see Pl.'s Mem. at 5-6, the ALJ also elicited testimony regarding the effects of Plaintiff's pain on Plaintiff's ability to stand and walk, Tr. at 51. Moreover, Plaintiff had already provided a detailed account of her daily activities in the function report she completed, as summarized above.

For the foregoing reasons, the ALJ's assessment of Plaintiff's subjective complaints is supported by substantial evidence, and the ALJ fully and developed the record.

## V. Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence. Accordingly, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3) **AFFIRMING** the Commissioner's final decision.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on March 9, 2020.

JAMES R. KLINDT
United States Magistrate Judge

bhc
Copies to:
Counsel of Record